IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 26, 2018

## STATE OF TENNESSEE v. JAMES T. HUTCHINS

**Appeal from the Criminal Court for Hamilton County**
**No. 282821          Tom Greenholtz, Judge**

_____

### No. E2017-02138-CCA-R3-CD
_____

The Defendant, James T. Hutchins, appeals the Hamilton County Criminal Court's order revoking his probation for his criminal exposure of another to human immunodeficiency virus (HIV) conviction and ordering him to serve the remainder of his four-year sentence in confinement. The Defendant contends that the trial court abused its discretion by ordering him to serve his sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Steven E. Smith, District Public Defender, and Kevin Loper, Assistant District Public Defender, for the appellant, James T. Hutchins.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Neal Pinkston, District Attorney General; and Ancharlene Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On October 7, 2015, the Defendant pleaded guilty to criminal exposure of another to HIV and received a four-year sentence to be served on probation. On February 24, 2016, a probation violation report was filed, which alleged that the Defendant had moved to another county without permission, had not reported to his probation officer since October 21, 2015, had failed to pay supervision fees or provide exemption documentation, and had been "regularly engaging in unprotected sexual activity with a party that was unaware of [the Defendant's] HIV status." The report stated that during attempts to contact the Defendant, probation officers Nicole Anderson and Dena Stewart spoke with a woman, that the officers advised the woman to tell the Defendant to contact them, that the woman inquired about the

Defendant's conviction offense, and that the woman advised she had unprotected sexual relations with the Defendant. The report stated that the incident involving the woman had been reported to the district attorney's office and to the Tennessee Department of Correction. On November 17, 2016, the Defendant waived his right to a probation violation hearing and conceded to the violation. The court revoked the Defendant's probation, ordered him to remain in custody until December 27, 2016, to undergo a psychological evaluation, and to follow the recommended treatment before being returned to probation.

On May 8, 2017, a probation violation report was filed, which alleged that the Defendant had been arrested twice for violating the sexual offender registry, that he did not report to his probation officer after his release from police custody, that he moved to a hotel without first informing his probation officer, that he did not leave the hotel as his probation officer instructed, that he had not paid any supervision fees and court costs, that he violated the sexual offender registry by moving into an exclusion zone where sexual offenders were not allowed to live, and that he had behaved in a manner that threatened himself and others.

The violation report explained that the Defendant called his probation officer to inform him that he had moved into a hotel, that his probation officer informed him that the hotel was located within an exclusion zone and that he had to leave, that the Defendant did not leave the hotel, and that he was arrested for violating the sexual offender registry on April 6, 2017, after having missed a scheduled meeting with his probation officer. The report stated that on May 8, 2017, the Defendant called his probation officer to report that he had been released from jail on May 5, that the probation officer advised him to report to the probation office on May 9, that the probation officer discovered the Defendant had been released from jail on May 2, and that as a result, the Defendant had violated the rule requiring him to report within forty-eight hours of his release from jail. The report alleged that the Defendant was arrested on May 9 for a second violation of the sexual offender registry.

At the probation revocation hearing, probation officer Daryl Smith testified that in 2016, the Defendant violated the conditions of his release by moving to another county without permission, failing to report to his probation officer, and engaging in unprotected sexual relations with a person who was unaware of the Defendant's HIV status. Mr. Smith said that as a result of the violations, the Defendant spent time in confinement and was returned to probation in January 2017.

Mr. Smith testified that on April 4, 2017, the Defendant called him to report a change of address to a hotel. Mr. Smith said that the Defendant was required to inform his probation officer before moving because it allowed the probation officer to ensure a potential new residence was not within an exclusion zone for a registered sexual offender. Mr. Smith said that the Defendant had already moved to the new address at the time of the April 4 telephone

conversation and that the hotel was within 1000 feet of a public park, an area from which the Defendant was excluded. Mr. Smith said that when he learned the hotel was located within an exclusion zone, he told the Defendant to leave immediately because the Defendant was not allowed to live there. Mr. Smith said that the Defendant reported having already paid the hotel and refused to leave. Mr. Smith said that after their telephone conversation ended, the Defendant was charged with violating the sexual offender registry.

Mr. Smith testified that on May 2, 2017, the Defendant was released from custody after his arrest for violating the sexual offender registry and that he was required to report to his probation officer within forty-eight hours of his release. Mr. Smith said that the Defendant did not report within forty-eight hours and that on May 8, the Defendant called and reported he had been released from custody on May 5. Mr. Smith said that he reviewed the "CJUS" records, which showed the Defendant had been released on May 2, and that Mr. Smith filed a subsequent probation violation report.

Upon questioning by the trial court, Mr. Smith testified that the Defendant was not a "good candidate" for probation. Mr. Smith stated that during three months of supervision, it did not appear that the Defendant wanted to comply with the terms of his release. Mr. Smith said that the Defendant appeared to do what that the Defendant wanted. Mr. Smith said that the Defendant had never paid any probation fees and that the Defendant had not been employed.

The Defendant's criminal history was received as an exhibit, which showed that the Defendant had 1999 and 2011 convictions for criminal exposure of another to HIV and a 1994 conviction for public intoxication.

The Defendant testified that he did not call his probation officer before moving to the hotel that was located in an exclusion zone. He said that he did not know about exclusion zones because he had never been placed on the sexual offender registry before his 2015 conviction. He admitted, though, that he knew he was required to call his probation officer before moving to the hotel. He said he made a mistake by not calling before moving and explained he did not know the park was located nearby.

The Defendant testified that he did not report to his probation officer within forty-eight hours of being released from jail because he did not have transportation to travel to the office. He admitted that he called the probation office five or six days after his release and that he lied to his probation officer about his release date. He accepted responsibility for lying and for not reporting to his probation officer in a timely manner. He said that he lived with his sister, that her home had been approved by the probation office, that she was willing to help him, and that he could "do everything the right way" when his "check started back up."

The Defendant testified that he did not know he had to pay supervision fees and said that he thought the fees were waived because his income was limited to disability benefits. He denied being told to pay supervision fees. He said he would pay supervision fees in the future. He said that he was a suitable candidate for probation because he had learned his lesson and would "take care of business" in the future. He said he was responsible and could comply with the conditions of probation. He said that he now understood special conditions applied to sexual offenders and that he would comply with them.

On cross-examination, the Defendant testified that although he conceded to the 2016 probation violation, he had permission to go to another county. He said that although he called his probation officer after moving to the hotel, he had difficulty reaching his probation officer by telephone. He noted that he could not leave his probation officer a voicemail because the probation officer's mailbox was usually full with messages. The Defendant said that he did not intend to break the law by moving to the hotel and that he only wanted his own place to live.

The Defendant testified that he "didn't really refuse" to leave the hotel after speaking with his probation officer but said he had paid $700 rent, had been unable to contact his sister, and had no means of moving his belongings from the hotel. He said that his sister collected his belongings from the hotel after his arrest. He said that he stayed at the hotel approximately four or five days after his probation officer told him to leave. He said that he called his probation officer on May 2 but that he did not speak with the officer or leave a message because the mailbox was full. He agreed, though, he did not report to the probation office because it "slipped [his] mind" and because he did not have transportation. He said everyone he knew with transportation worked. He said later, though, that reporting to his probation officer did not slip his mind and that he did not report because he did not have transportation.

Upon examination by the trial court, the Defendant testified that he did not know he had to pay supervision fees and that he did not know the initial probation violation report alleged he had failed to pay them. He thought he did not have to pay them because he received disability benefits.

The Defendant testified that he called his probation officer seven to ten times before moving to the hotel but that his probation officer did not answer. When the judge noted the Defendant had testified on direct examination that he did not obtain permission to move, the Defendant stated that he tried to obtain his probation officer's permission but that he moved without speaking to his probation officer.

The Defendant testified that after he was released from police custody on May 2, he called his probation officer, who did not answer. The Defendant said that he called his probation officer again on May 3 and that his probation officer did not answer. The Defendant said that he told his probation officer that he had been released on May 5 because he knew his probation officer was insistent about finding transportation to the probation office. He said he did not wear a GPS monitoring device during this time.

Samantha Bayles, a sentencing advocate at the public defender's office, testified that she had worked with several organizations to determine if the Defendant could benefit from residential programs that accepted registered sexual offenders. She said that she found a few programs for which the Defendant qualified but that the programs had extended waiting times or required a monetary deposit for acceptance, which the Defendant could not afford without the reinstatement of his disability benefits.

Ms. Bayles testified that she spoke with the Defendant's sister, who advised that the Defendant could live with her. Ms. Bayles said that the Defendant's sister could not attend the revocation hearing because of her work schedule. Ms. Bayles said that the Defendant intended to live with his sister until his disability benefits were reinstated and that he wanted to obtain permission to move to an extended stay hotel, which Ms. Bayles believed was not located in an exclusion zone. When asked if she believed the Defendant was a suitable candidate for probation, she said that the Defendant became easily confused. She said that she noticed the Defendant's confusion during her conversations with him and during his testimony at the hearing. She said that speaking slowly and having the Defendant repeat things back to her had helped ensure the Defendant understood what was expected of him. She did not believe the Defendant intended to violate the conditions of his release.

The trial court found that the Defendant knowingly violated the residency restrictions by not obtaining permission from his probation officer before moving to the hotel and by willfully refusing to comply with the probation officer's order to vacate the premises after learning the hotel was located within an exclusion zone. The court did not determine that the Defendant violated his probation by failing to pay supervision fees and noted the lack of evidence showing the Defendant had the ability to pay the fees.

The trial court found that the present violations were serious and that the Defendant had violated the probation conditions previously by moving to another county, failing to report to his probation officer, failing to pay supervision fees, and continuing to have unprotected sexual relations knowing his positive HIV status. The court noted that the Defendant served time in jail as a result of the previous violation and found that "lesser sanctions" did not bring the Defendant into compliance with the terms of his release. The court found that the present and previous violations were of the same nature and involved the failure to report to his probation officer and moving without his probation officer's consent.

The trial court found that the Defendant testified on direct examination that he intentionally did not call his probation officer before moving but that on cross-examination, the Defendant testified that he called the officer multiple times before moving. The court discredited the Defendant's testimony and determined that the Defendant's "intentional misconduct" was shown by the Defendant's failure to move from the hotel when he learned it was located within an exclusion zone. The court found that the Defendant could have complied with the terms of his probation if he had wanted.

The trial court found that the Defendant intentionally did not report to his probation officer and discredited the Defendant's testimony that he attempted to contact his probation officer on May 2 or May 3. The court found that the Defendant "deliberately [misled]" and "intentionally lied" to his probation officer by stating he was released on May 5. The court stated that misleading the probation officer would have been unnecessary had the Defendant attempted to call his probation officer before May 5. The trial court determined that the Defendant had not been candid during his testimony and stated that the Defendant's lack of honesty was relevant to the Defendant's amenability for rehabilitation.

The trial court discredited the Defendant's testimony that he was unaware he was responsible for paying supervision fees and found that the failure to pay fees was a basis for the previous probation violation. The court stated that the substantial jail time ordered at the previous revocation hearing was "meant, in part, to reinforce that obligation." The court, though, did not determine that the Defendant had violated his probation on the basis of failure to pay fees at the present revocation proceeding.

The trial court determined that the Defendant had a pattern of behavior reflecting an indifference toward his probation responsibilities in which the Defendant "ask[ed] for forgiveness rather than permission." The court determined that its initial decision placing the Defendant on probation was "no longer a valid decision" and that the evidence did not show the Defendant "would remain a good candidate for probation" based upon the Defendant's repeated willful violations, his lack of condor, and the ineffectiveness of lesser sanctions to force him into compliance with the rules of probation. As a result, the court ordered the Defendant to serve the remainder of his sentence in confinement. This appeal followed.

The Defendant contends that the trial court erred by ordering him to serve the remainder of his sentence in confinement. The Defendant argues that the court should have ordered split confinement of eleven months, twenty-nine days before returning him to probation. He does not challenge the trial court's determination that he violated his probation, and he concedes in his appellate brief that he violated the conditions of his release. The State responds that the trial court did not err by ordering the Defendant's

-6-

sentence into execution after determining he had violated the conditions of his release. We agree with the State.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 378 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that the Defendant did not consult his probation officer before moving to the hotel and did not leave promptly when his probation officer told him the hotel was located within an exclusion zone for registered sexual offenders. The Defendant admitted on direct examination that he knew he was required to speak with his probation officer about a potential change of address before moving and that he did not contact and obtain approval from his probation officer as required. Although the Defendant testified on cross-examination that he attempted to contact his probation officer before moving, the trial court discredited the Defendant's testimony in this regard. The Defendant also admitted that he stayed at the hotel several days after he was told to leave, which resulted in his arrest for violating the sexual offender registry.

Furthermore, the Defendant admitted lying to his probation officer about his release date from police custody after his arrest. Although the Defendant testified on cross-examination that he attempted to contact his probation officer after his May 2 release date, the trial court discredited the Defendant's testimony in this regard. The Defendant admitted that he lied to his probation officer about his release date, and the record shows that he did not report to his probation officer within forty-eight hours of his release. The record supports the trial court's finding that the Defendant violated the conditions of his probation.

Because we have concluded that the record supports the trial court's findings that the Defendant violated the conditions of his probation, we likewise conclude that the court did

not abuse its discretion by revoking the Defendant's probation. *See* T.C.A. § 40-35-311(e)(1). Once the court revoked the Defendant's probation, it had the authority to order the Defendant to serve his sentence in confinement. *See id*. §§ 40-35-308(a), (c), -310. The Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE